## Carter, et al. v. Monarch.

(Decided October 5, 1916.)

### Appeal from Meade Circuit Court.

1. Life Estates—Taxation—Payment of Taxes by Life Tenant.—It is the duty of the life tenant to pay the taxes on the land as between him and the remainderman, and the life tenant who purchases the land at a tax sale cannot assert title against the remainderman by virtue of the purchase.

2. Life Estates—Taxation—Purchase at Tax Sale by Occupier of Land—Effect of.—Where the land was occupied by the widow as a homestead, and her son-in-law, who lived with her on the land, purchased the land at a tax sale, his purchase will be treated as having been made for the benefit of the life tenant, and he cannot assert title to the land as against her or the remainderman, nor can he by a verbal agreement with the life tenant divest the remainderman of his interest in the land.

3. Adverse Possession—Homestead.—A person occupying land as a homestead does not hold it adversely to the remainderman.

LEWIS & ASHCRAFT for appellants.

IRWIN & IRWIN and R. L. STITH for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1891 Robert Monarch died intestate leaving surviving him his widow, Mary Monarch, his son, Robert Monarch, and his daughter, Rebecca Monarch, who a few months after her father's death, married M. L. Buckler. At the time of his death Robert Monarch owned about one hundred acres of land and more than $200 worth of personal property. S. B. Woolfork, who was then sheriff of the county, was appointed administrator of his estate, and after there had been set apart to the widow as her distributable share of the personal estate a number of items of personalty, the remainder of the personal estate was sold by the administrator and brought $12.95.

After the death of Robert Monarch, the widow and her daughter and husband, M. L. Buckler, lived on the hundred-acre tract of land, which was apparently occupied by them as the homestead of the widow, and the son, Robert Monarch, lived on other property in the neighborhood for several years, when he moved to Louisville, Ky.

In 1896 the hundred acres of land was sold by the sheriff of the county for taxes due by the decedent, Robert Monarch, for the year 1891, and at this sale it was purchased by one T. P. Noel for $10.35, who transferred his purchase to the son-in-law, Buckler, and thus the matter stood until August 13, 1898, when a deed was made by the then sheriff of Meade county to Buckler, the consideration being the amount paid by Noel as taxes.

In 1913 the widow, Mrs. Monarch, and Buckler and his wife sold the land, on which they had been living since the death of Robert Monarch, to the Carters for $1,400, a part of which was paid in cash and the balance some time later. After the sale to the Carters, the widow and her daughter and son-in-law moved off the premises.

On August 9, 1913, this suit was brought by the son, Robert Monarch, against the Carters, the Bucklers and his mother, the widow of Monarch, in which, after setting out the substance of the foregoing facts, he asked that he be adjudged the owner of the one-half interest in the hundred acres of land left by his father.

After the case had been prepared for trial, it was submitted and adjudged by the court that Robert Monarch was entitled to an undivided one-half interest in the land, and the deed to the Carters was canceled to that extent. From this judgment the Carters, the widow and the Bucklers appeal.

From the foregoing statement of facts it will be seen that at the death of Robert Monarch, his widow, as the owner of the homestead, took possession of the hundred acres of land and continued to reside on it with her daughter and son-in-law until it was sold in 1913. Her holding and occupancy of the land during this time was not adverse to any person, as she had the right to its control and occupancy as a homestead. It might further be here noticed that the personal property set apart to her, amounting in value to probably two hundred dollars, was turned over or given by her to her son-in-law, Buckler, so that there was ample personal estate left by the decedent to pay the taxes due at his death. But in place of paying this small tax, they permitted the land, which was then worth as testified to by Buckler, $700, to be sold for $10.35, for which price Buckler, the real pur-

chaser at the tax sale, secured it from Noel, the nominal purchaser.

After this tax sale, Buckler claims that by some private arrangement between himself and the widow she recognized his ownership of the land by virtue of this sale and consented that he might have control and possession of it, with the understanding that she should be taken care of and supported by him.

There is some conflict in the evidence as to whether Robert Monarch knew of this tax sale or the arrangement between his mother and Buckler or knew that after this tax sale and after Buckler obtained the sheriff's deed he was asserting title to the land. But the evidence upon this point was not, under the circumstances, sufficient to put Robert Monarch upon notice of any assertion of adverse claim or title by Buckler or his mother.

It was the duty of Mrs. Monarch as life tenant to pay this tax, and neither Mrs. Monarch nor Buckler can assert any title to the land by virtue of the purchase at the tax sale or by virtue of the sheriff's deed: Bradley v. Sears, 138 Ky. 230. Mrs. Monarch and Buckler could not by their failure to pay the tax, or by the agreement under which the possession and title to the land was transferred as between them to Buckler, defeat the rights of Robert Monarch, who, subject to the homestead right of his mother, was entitled to an undivided one-half interest in the land. To permit Mrs. Monarch and Buckler by methods of this kind to divest Robert Monarch of his interest in the land would be, in effect, transferring to Buckler without right or reason property to which Robert Monarch was entitled.

It is clear that the purchase of Buckler while living on the land, under the circumstances stated, should be treated as if made for Mrs. Monarch, and that his purchase inured to her benefit. A person situated as he was could not claim the land as against the life tenant, under a purchase made at a tax sale, and so the condition is the same as if Mrs. Monarch and not Buckler had purchased the land.

But it is the contention of Buckler that Mrs. Monarch, after he became the purchaser at this tax sale, made a verbal agreement with him by which she transferred her interest in the land to him, and therefore it is said that under this agreement and his purchase at the tax sale, followed by the sheriff's deed, he became the

owner of the fee in the land. But as it was the duty of Mrs. Monarch to pay the tax, plainly, she could not by permitting the land to be sold for taxes and purchased by her son-in-law, who was living with her, put herself in any better position than if she had been the purchaser. Indeed if there had been no agreement between Buckler and Mrs. Monarch, his purchase, under the circumstances, would have been treated as having been made for the benefit of all persons interested as owners in the land, and so the agreement does not better his position.

The statute of limitation, although relied on to defeat the claim of Robert Monarch, is not available for that purpose. Buckler did not by virtue of the sheriff's deed secure title to any of the land, and therefore Mrs. Monarch and Buckler could not convey to the Carters the undivided interest owned by Robert Monarch. It would be intolerable to permit Buckler, individually or in connection with Mrs. Monarch, under the circumstances shown in this record, to take from Robert Monarch his interest in this land.

The judgment is affirmed.